*96 The opinion of the Court was delivered by
Warel aw, Ch.
The plaintiffs have not pressed their appeal upon us, indeed have avowed their willingness that the circuit decree shall stand; the creditors Conner & McCel-vey, so far as we can judge from the imperfect brief before us, have no just ground to complain of the decree, and it remains to consider the appeal of the executor of Alexander Houston, that the shares of Parks and wife and 0. B. Houston in the proceeds of the sale of Social Hall are barred by the statute of limitations. Jane Postell before and when she became the wife of Alexander Houston, was seized in fee of the plantation called Social Hall, and of certain slaves and other property; and in the treaty of marriage between these parties, it was agreed that all the estate of the intended wife should be settled to her separate use. In pursuance of this agreement and after their intermarriage, the parties, on November 18, 1826, did convey the negroes and other chattels to John E. Pelot, in trust for the separate use of the wife, with power of appointment, and in lack of appointment, and in case of her predeceasing her husband, at her death for her issue; and in the same instrument, the parties, without actually settling Social Hall, agreed that it should be settled upon the same trusts as the personalty, and that in the meantime they, Houston and wife, should “ have power to sell and dispose of the same, and lay out the proceeds on the same trusts as were therein declared concerning the personalty.” In April, 1837, Houston sold this land to J. E. Calhoun for twenty-four hundred dollars, and afterwards received the purchase money; Pelot as trustee making the conveyance. On February 10, 1838, Houston purchased the Bentley tract for five hundred dollars, and took a conveyance to this trustee, but not precisely on the trusts of the settlement, and 'in 1844, he purchased the Fort Hannah tract, which he seems to have valued at nineteen hundred dollars, and took the conveyance, to himself. Houston died in 1855, *97 and bj bis will dated August 11, 1855, be devised Port Hannah to bis seven children who were the issue of bis wife Jane.. These children filed this bill, January 7, 1856, among other objects, for the proceeds of Social Hall, not contesting the title of the purchaser; and the executor pleads the statute of limitations. Two of the plaintiffs attained maturity more than four years before the bill was filed, namely, Mrs. Parks on May 7, 1848, and C. B. Houston January 22, 1850; and as to these two only, the others' being"infants, is the statute relied upon.
The Chancellor held that the statute was no bar, because the devise to the plaintiffs of Port Hannah was satisfaction pro tanto of the plaintiffs’ claim, and served as a recognition of this claim at the death of the testator, creating a new point of time for the beginning of the barring term of the statute. "Without discussing the sufficiency of these particular grounds, we think the Chancellor’s conclusion may be vindicated for more palpable reasons.
We regard Alexander Houston as express trustee to reinvest the proceeds of Social Hall in other estate, and that his executor as representative stands in the position of the testator. Social Hall was not conveyed to Pelot as trustee by the post-nuptial deed, but was reserved under the express covenant of Houston and wife, equivalent to his single covenant, that they would reinvest the proceeds of sale, which they were authorized to make, in other estate to be held for prescribed uses. He sold, but did not reinvest the proceeds, at least for the whole sum. This express trust continued until full reinvestment." Lord Nottingham, who has been sometimes called the father of equity, in Goolc vs. Fountain, 8 Swans. 585, defines implied trusts, to be such as are raised by construction of law, from the circumstances of the case, as from the relation of the parties, and defines express trusts to be those created by the act of the parties declared by word or writing, and manifested by express proof or violent pre *98 sumption. In tbe present case Alexander Houston expressly covenants to reinvest tbe proceeds of Social Hall for tbe use of bis wife and ber children; and although be did not fully reinvest, it does not appear that be ever repudiated or denied bis obligation to this duty. Justice and policy require that a mere trustee should not be protected by lapse of time, in any attempt to appropriate to himself tbe property of bis beneficiaries. So long as tbe trust continues, and while tbe trustee acknowledges bis relation to tbe beneficiaries, equity will grant to tbe beneficiaries an account or any other proper relief. If tbe trustee does some act distinctly importing an end of tbe trust, as if be makes a settlement of bis accounts apparently in full, or denies in tbe presence of tbe beneficiaries any or further liability, this breaks tbe fiduciary relation between tbe parties, and is an origin for tbe running of tbe statute against tbe beneficiaries, who are not under incapacity. Long vs. Gasón, 4 Eicb. Eq. 63, and tbe cases there cited. Instance of such an act as disturbs tbe fiduciary relation and creates a point from which tbe statute runs, is afforded in this case by tbe receipt taken by Alexander Houston from Parks and C. B. Houston, as to tbe negroes held in trust, more than four years before tbe filing of tbe bill, and we concur with tbe Chancellor in bolding that these plaintiffs are barred by tbe statute from any account for tbe hire of these negroes. But as to tbe proceeds of tbe sale of Social Hall, it does not appear, that Alexander Houston in any form disputed tbe rights of bis children by tbe latter marriage. The bill relates to tbe proceeds only, and we are not required to consider tbe title of tbe purchaser, Mr. Calhoun. If there be reasons, which do not appear to us, to doubt that Alexander Houston was a technical trustee to reinvest tbe proceeds of Social Hall, surely it cannot be contested that be was bailee of tbe proceeds, and agent for bis wife and children to reinvest; and in such case tbe statute does not begin to run until there be usurpation and refusal *99 of the xigbts of the claimants. As Chancellor Harper remarks in Lever vs. Lever, 1 Hill 67, “ the possession of an agent or bailee, (and a bailment is a trust) is the possession of the principal or bailor, and is not adverse until demand and refusal.”, In this case we are not advised of any demand or refusal before bill filed.
It is ordered and decreed that the appeal be dismissed.
JOHNSTON, DutsTKIN and DargAN, CC., concurred.

Appeal dismissed.